IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dylane Thomas Kelly, ) | C/A No. 0:12-3325-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

  This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Dylane Thomas Kelly ("Kelly"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

  In July 2007, Kelly applied for DIB, alleging disability beginning June 1, 2006. Kelly's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 6, 2009, at which Kelly, who was represented by Beatrice Whitten, Esquire, appeared and testified. After hearing testimony from a

___

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



vocational expert, the ALJ issued a decision on September 17, 2009 finding that Kelly was not disabled. (Tr. 106-14.)

Kelly submitted additional evidence to the Appeals Council. By order dated July 29, 2010, the Appeals Council granted Kelly's request for review, vacated the ALJ's September 17, 2009 decision, and remanded the matter to an ALJ for a new hearing. (Tr. 116-17.) A hearing was held on February 1, 2011, at which Kelly, who continued to be represented by Beatrice Whitten, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on March 31, 2011 finding that Kelly was not disabled. (Tr. 8-19.)

Kelly was forty-one years old on her date last insured. (Tr. 75.) She has a college education and past relevant work experience as a tax preparer, customer service representative, and cook. (Tr. 303-04, 314.) In her application, Kelly alleged disability since June 1, 2006 due to lower mechanical back pain, sciatica, lupus, arthritis, bursitis, carpal tunnel in both hands, migraine headaches, muscle pain, stress, depression, anxiety, fatigue, short term memory loss, asthma, bronchitis, pluerisy, hip pain, arteria tear, distorted bone in right hip, dyshidrosis on hands and feet, knee pain and swelling, and tendinitis. (Tr. 302.)

The ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2006. Accordingly, the claimant must establish disability from June 1, 2006, her alleged onset date, through September 30, 2006.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2006 through her date last insured of September 30, 2006 (20 CFR 404.1571 *et seq.*).

\* \* \*

3. Through the date last insured, the claimant had the following severe impairments: systemic lupus erythematosus, degenerative joint disease of the



>  left knee, degenerative disc disease, carpal tunnel syndrome, osteoarthritis of the hips, obesity, and depression with memory loss (20 CFR 404.1520(c)).
>  
>  \* \* \*
>  
>  4.  Through the date last insured of September 30, 2006, the claimant did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
>  
>  \* \* \*
>  
>  5.  . . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform a significant range of sedentary work as defined in 20 CFR 404.1567(a).  Specifically, the claimant is able to read and write; add and subtract simple numbers; can sit for 3 hours in an 8-hour day; can stand and walk for 4 hours each in an 8-hour day with the freedom to change her pos[i]tion; can lift and carry up to 10 pounds occasionally (up to 1/3 of the workday) and less than 10 pounds frequently (up to 2/3 of the workday); must avoid climbing ropes, ladders, and scaffolds but is able to perform other postural activities on an occasional basis; the claimant can rarely immerse her hands in cleaning fluids and liquids; is able to handle, finger, feel, hear, and see without significant limitations; must avoid concentrated exposure to heat and cold and avoid cooler temperatures less than ordinary room temperature; must be able to dress appropriately for the temperature (for example, if the claimant feels it is cool, she can wear a sweater[)]; must avoid moving or hazardous equipment and unprotected heights; must be allowed to write notes to assist her in following instructions; is unable to perform overhead reaching; cannot push or pull greater than 20 pounds of force; can perform gross manipulation but not fine manipulation (like picking up small beads); require no more than casual interaction with the general public; and is unable to crawl, kneel, squat, or crouch.  Such a residual functional capacity is well supported by the weight of the evidence of record.
>  
>  \* \* \*
>  
>  6.  Through the date last insured, as a result of her residual functional capacity as described above, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>  
>  \* \* \*
>  
>  7.  The claimant was born . . . [in] 1965, and was 41 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).
>  
>  8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).



9.       Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

\*    \*    \*

11.     The claimant has not been under a disability, as defined in the Social Security Act, at any time from June 1, 2006, the alleged onset date, through September 30, 2006, the date last insured (20 CFR 404.1520(g)).

(Tr. 10-19.) The Appeals Council denied Kelly's request for review on September 19, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;



(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind of work. 20 C.F.R. § 404.1520(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

Page 5 of 16



v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Kelly raises the following issues for this judicial review:

I.    The Commissioner's decision should be reversed with instructions to award Plaintiff the benefits to which the uncontroverted evidence of record demonstrates she is legally entitled.

II.   The ALJ constructively reopened Plaintiff's 2005 application for disability insurance benefits entitling her to back benefits commencing December 13, 2004.

(Pl.'s Br., ECF No. 16.)[3]

## DISCUSSION

Although Kelly couches her first argument as the relief she seeks, this issue appears to consist of two distinct arguments.  First, Kelly argues that the ALJ erred in failing to find that she met Listing 14.02 or consider listing equivalence.  Second, Kelly argues that the ALJ erred in evaluating the opinions of her treating physicians, Drs. Gregory Niemer, Hank Kearse, and Dennis Fisher.

---

[3] By contrast, in her reply brief, the plaintiff argues that she is seeking *remand of this matter for further proceedings* and does not mention awarding benefits.  (ECF No. 21 at 5.)



A.      Listing 14.02

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 404.1526(a).

In this case, Kelly argues that the ALJ erred in failing to find that she satisfied Listing 14.02. This listing states:

> Systemic lupus erythematosus. As described in 14.00D1.  With:
> A.      Involvement of two or more organs/body systems, with:
>    1.      One of the organs/body systems involved to at least a moderate level of severity; and
>    2.      At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
> or
> B.      Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>    1.      Limitation of activities of daily living.
>    2.      Limitation in maintaining social functioning.
>    3.      Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.



20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.02. Section 14.00D1 further provides that systematic lupus erythematosus is documented and evaluated as follows:

> a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.
>
> b. Documentation of SLE. Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D1. In this case, the ALJ found with regard to Kelly's systemic lupus erythematosus that

> the medical evidence of record fails to indicate that the claimant's condition involved two o[r] more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity and at least [] two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) or repeated manifestations of systemic lupus erythematosus with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: limitation of activities of daily living; limitation in maintaining social functioning; and limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(Tr. 12.)

In support of her allegation of error, Kelly conclusorily asserts that she is legally entitled to benefits based on Listing 14.02 and then proceeds for the next fourteen pages to summarize her



treatment records from June of 2000 through January 2007 concerning all of her impairments. (Pl.'s Br. 5-19, ECF No. 16 at 5-19.) Kelly points to a "listing letter" dated June 22, 2009, in which Dr. Niemer indicated that Kelly meets the requirements of Listing 14.02 and has since at least September 30, 2006. Finally, Kelly argues that the ALJ's decision consists of nothing more than boilerplate language and fails to reconcile the medical findings that demonstrated listing level severity and summarily states that the ALJ failed to consider listing equivalence based on all of her impairments.

The Commissioner responds that Kelly has failed to meet her burden of demonstrating that she meets Listing 14.02, arguing that Kelly's general assertions are insufficient to meet her burden; that the ALJ adequately explained her Listing analysis; and that the ALJ's decision is supported by substantial evidence.

The court has reviewed the ALJ's decision, the record, and the parties' arguments in this matter, and finds that Kelly has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law. As an initial matter, the court observes that the relevant time period for the application at issue in this matter is June 1, 2006 through Kelly's date last insured, September 30, 2006, which is approximately four months.[4] The ALJ found that the medical evidence of record did not indicate the items required to meet Listing 14.02 and Kelly has failed to demonstrate that this finding was unsupported by substantial evidence. For example, Kelly's conclusory assertions do not reveal contradictory credible medical evidence of record that

---

[4] Many of Kelly's arguments appear to rest predominately on medical records far outside the relevant period. Although Kelly argues that the ALJ constructively reopened an earlier application, as discussed in Section C, the court finds this argument unavailing.



relates to the relevant time period.[5] The court observes that it is the plaintiff's burden to present evidence that her condition meets or equals a listed impairment. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir.1986); see also 20 C.F.R. §§ 404.1512, 404.1515; Sullivan, 493 U.S. at 531 ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.").

Furthermore, even if the court were to agree with Kelly's assertion that the ALJ's discussion consists solely of boilerplate language, use of boilerplate does not warrant reversal where the ALJ adequately explains her findings. See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) (finding that reversal and remand is not always necessary when boilerplate credibility language is used and stating that "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless"). Reading the opinion as a whole, the court finds that the ALJ adequately explained her findings and Kelly has failed to demonstrate how additional discussion of the Listings would have changed the outcome in this case. See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases); see also Craven v. Astrue, C/A No. 9:11-1674-RBH, 2013 WL 1282022, at *5 (D.S.C. Mar. 26, 2013) ("The Court is mindful of the boilerplate language used by the ALJ, but the deference this Court must give to the Commissioner requires that it take the ALJ's findings, as long as they are supported by substantial evidence, at face value.").

---

[5] Kelly's reliance on Dr. Niemer's opinion is unavailing as the ALJ found that Dr. Niemer's opinions were entitled to little weight, which, for the reasons discussed below, Kelly has failed to demonstrate was erroneous.

**B.     Treating Physicians**

Kelly also argues that the ALJ improperly discounted opinions from three treating physicians. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(c)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

**1.     Dr. Gregory Niemer**

After summarizing Dr. Niemer's 2007 report which included opinions on Kelly's limitations, the ALJ observed that on June 22, 2009, "Dr. Niemer reported that the claimant's impairments had prohibited her ability to work since June 2006."  (Tr. 15.)  In evaluating Dr. Niemer's opinions, the ALJ found as follows:



> [F]ollowing a thorough review of the evidence of record, the undersigned must accord these limitations little weight becaus[e] they are inconsistent with the evidence of record as a whole and Dr. Niemer's own treatment notes. A review of Dr. Niemer's note[s] during the period from the claimant's alleged onset date to her date last insured indicates generally less than significant findings upon examination. During this period, the claimant complained of falling out of her bed and short-term memory loss. However, no significant physical or mental findings were noted upon examination. Moreover, the claimant was able to work in the past despite her back condition and systemic lupus erythematosus and treatment notes fail to indicate any significant exacerbation in her medical condition. Dr. Niemer reported that the claimant's systemic lupus erythematosus was inactive in July 2006. While it was described as "active" in December 2006, the claimant was noted to appear comfortable. See also Exhibit 7F and Exhibit 17F. Thus, following a thorough review of the evidence of record, the undersigned concludes that these medical opinions are based primarily upon the claimant's subjective complaints and not objective medical findings. In so finding, the undersigned notes that the claimant was not assessed with any physical restrictions following a medical evaluation for her systemic lupus erythematosus by the VA Medical Center in September 2006. See Exhibit 15F. This finding is also consistent with the medical findings of the claimant's treating orthopedic surgeon, Dr. James McCoy. Of note, in October 2005, following surgery for her knee, Dr. McCoy found that the claimant should be able to return to her work as a tax preparer for the upcoming tax season. Exhibit 6F.

(Tr. 15.)

Kelly argues that the ALJ "rejected Dr. Niemer's 2009 opinion on the erroneous assertion that it was not based on his own treatment notes."[6] (Pl.'s Br. at 20, ECF No. 16 at 20.) Kelly summarily argues that Dr. Niemer treated Kelly for nine years at the time of the 2009 opinion, and that the opinion was based on positive findings that he discovered and recorded from his examinations during his treatment relationship. However, as quoted above, the ALJ's evaluation of Dr. Niemer's opinion is more detailed than Kelly appears to acknowledge. Upon review of the ALJ's decision and the parties' arguments, the court observes that the ALJ gave Dr. Niemer's

---

[6] The 2009 opinion appears to be the letter in which Dr. Niemer indicates that Kelly meets the requirements for Listing 14.02. Kelly does not challenge the ALJ's evaluation of Dr. Niemer's report from September 27, 2007 that included additional opinions on Kelly's limitations.



opinions little weight because she found that they are not supported by the medical evidence, particularly the medical evidence relating to the relevant time period, and other evidence of record, both of which are acceptable reasons under applicable law. See 20 C.F.R. § 404.1527(c); Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). While Kelly may disagree with the ALJ's ultimate determination, she has failed to demonstrate that the ALJ failed to properly apply the relevant factors or that the ALJ's decision with regard to Dr. Niemer is unsupported by substantial evidence.

    2.    **Dr. Hank Kearse**

In evaluating Dr. Kearse's opinion, the ALJ found the following:

> In January 2006, Dr. Hank Kearse, the claimant's treating dermatologist, reported that during periods of active flaring of her eczema, the claimant would be unable to perform any work-related activity due to her pain and psychological results. Dr. Kearse noted that while the claimant's eczema condition was generally easily controlled, flare-ups could be exacerbated at any time. See Exhibit 10F. However, as treatment records fail to support these restrictive findings, the undersigned accords them limited weight. Of note, Dr. Kearse did not treat the claimant on a significant basis and treatment notes fail to indicate any significant dermatological problems or flare-ups during the period from the claimant's alleged onset date to her date last insured.

(Tr. 15.) Kelly argues that contrary to the ALJ's findings and based on her summary of the medical records, Dr. Kearse's treatment notes support his opinion. Upon review of the plaintiff's brief, it appears that she is referring to records from 2003 and January 2004, which are well before the time period at issue. Kelly has pointed to no medical records suggesting any dermatological problems



or flare-ups other than those remote records. Accordingly, Kelly has similarly failed to demonstrate that the ALJ failed to properly apply the relevant factors or that the ALJ's decision with regard to Dr. Kearse is unsupported by substantial evidence.

### 3. Dr. Dennis Fisher

In evaluating Dr. Fisher's opinion, the ALJ found the following: "Dr. Dennis Fisher reported in August 2007, that the claimant was disabled as a result of her medical condition. However, Dr. Fisher did not begin his treating relationship with the claimant until August 2007. Thus, his opinion with regard to the claimant's condition is not relevant for the period from June 1, 2006, through September 30, 2006. See also Exhibit 26F." (Tr. 15.) Kelly argues, and the Commissioner concedes, that the ALJ's proffered reason for rejecting this opinion was error as Dr. Fisher has been Kelly's treating physician for at least seven years at the time he authored the opinion. However, notwithstanding this error, Kelly cannot demonstrate that it is harmful as the issue of whether a claimant is disabled is reserved to the Commissioner and opinions by medical sources on that point are not entitled to special significance. 20 C.F.R. § 404.1527(d); see Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases). Dr. Fisher's opinion fails to include any opinion regarding Kelly's functional limitations or otherwise indicate any support for his opinion. Therefore, the court finds that remand is not warranted on this issue.

### C. Relevant Application

Finally, Kelly argues that the ALJ constructively reopened her 2005 application for DIB referring to evidence that was used to support the denial of her 2005 application. In support of this argument, Kelly relies on Barton v. Secretary of Health and Human Services, 683 F. Supp. 1024,



1029 (D.S.C. 1988) (citing McGowan v. Harris, 666 F.2d 60, 65 (4th Cir. 1981) for the proposition that "[w]here the Commissioner reconsiders a plaintiff's application to any extent on the merits, the reviewing court must treat the previous application as reopened to the same extent." (Pl.'s Br. at 22, ECF No. 16 at 22) (emphasis deleted). However, the court finds Barton inapposite. Unlike Barton, the ALJ did not expressly refer to Kelly's prior applications, indicate on the hearing notice that her prior applications would be considered, or make any rulings regarding her prior periods of alleged disability. In fact, the ALJ in this case repeatedly referred to the limited period at issue.

## RECOMMENDATION

For the foregoing reasons, the court finds that Kelly has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 22, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).